15-20505 Yates v. Collier, et al. You may proceed. Thank you. May it please the Court? The District Court's order should be reversed because it failed to conduct the rigorous analysis required by Rule 23. Specifically, it failed to apply the correct legal standards to determine commonality under Rule 23a.2 and to determine the suitability of class-wide relief under Rule 23b.2. As applied by the District Court, Rule 23 effectively became a pleading standard, and that is directly contrary to Wal-Mart v. Dukes. To start with commonality, it required the Court to identify at least one common question among class members that would produce a common answer. The District Court's error is that it merely restated the class member's legal claim. That's incorrect because the existence of a substantial risk depends on at least two things. First, it depends on individual health conditions. That's something that this Court recognized in Ball. Second, it depends on the effectiveness of mitigation measures. Mr. Frederick, could you maybe move the microphone a little closer to you and speak up? Of course. Thank you. Second, as to mitigation measures, we know from the record that the effectiveness of mitigation measures varies among class members. We know, for example, that Mr. Santee, who is young and healthy, he has testified in his deposition that he has not experienced any heat-related problems, and in his experience, other young and healthy inmates don't suffer from the heat. The mitigation measures are effective. Now, even if that's not true for other members of the class, we have such a variation in susceptibility to heat that the question of substantial risk cannot produce a common answer for the class, and that should have been enough to defeat commonality. What the plaintiffs have essentially argued is that the Eighth Amendment requires the state to eliminate all risk, and that's not what the Eighth Amendment requires. We know that also from Ball. Some risk is inevitable. What the Eighth Amendment requires is to eliminate unreasonable risk of serious damage, mitigate risk, or reduce it to a reasonable level. Here, Ball and Gates simply didn't permit the district court to find that there was a substantial risk to every member of the class, despite existing mitigation measures. So is your point that they should be doing subclasses for the sick and the disabled and the elderly? And what is your point? Well, when we have such a variation of risk, that would be something that the court would have to do. The problem here, though, is that as to the subclasses, the district court's order doesn't even talk about the subclasses and what risk they face. You're not disputing, though, that the sick and the elderly and the disabled face a risk here? Not at all. No, of course not. And we're not disputing that as a general matter, heat itself poses a risk. That's undisputed. The question is, are the mitigation measures in place sufficient to reduce that risk to an acceptable level? Don't we have a whole bunch of cases, though, that say that they're not for particular plaintiffs already? We have a lot of cases where these ice and the fans and the ice and the this and the that are not good enough. And we're starting to get more and more, but I think we had just a couple of these last year, two or three. So what is it you're saying that you need more of? What we need more of is that the district court had to consider how the mitigation measures affected these class members. The fact that there may be a risk despite the provision of mitigation measures for some people, that's not enough to certify a class. We have to look under 2382 and say, the question, are these mitigation measures effective? Is the answer yes or no as to every class member? Here we know, even if there is a substantial risk to some class members, we know that there is not for others. And there's a second layer that this problem creates. Does it have to be a perfect fit, counsel? I'm not sure that it has to be a perfect fit, but it has to be at least close enough where we can be reasonably sure that within this broad class, there is, actually for a general class like this, yes. The answer would have to be yes or no. So if one person is not affected by the heat because they have some genetic heartiness or something, then you can't have a class? Is that what the law says? I'm not aware of any law talking about people who are superhumanly immune to the heat. So for whatever reason, if one person you can show is not affected, does that mean a class action isn't appropriate? Yes, yes. What case says that, that if one person is not affected, the class action is inappropriate? I cannot think of a specific case now, but Walmart versus Dukes clearly establishes that this has to be a yes or no answer, and it has to be the same for the class. So here we've got at least one class member who faces an obviously different level of risk given the mitigation measures. The second layer of problem that this creates comes under Rule 23B2. To certify a B2 class, the district court had to identify specific relief that would provide a remedy for all of the class members. The question is not whether the class is subject to a common practice. That would just be a pleading standard. The question is what specific remedy is appropriate, and can that single injunction provide relief to all of the class members? Or will the class members require different remedies? Here, the district court didn't say. It identified two possible remedies. One would be facility-wide air conditioning. The other would be, quote, less drastic measures, unquote. Well, we know that facility-wide air conditioning is not acceptable for the entire class. That follows from Ball. Not acceptable. You mean not required. Is that what you mean? Not acceptable. Not required, and therefore not permissible under the PLRA. But it's important to note that in Ball, the court- What does the PLRA have to do with class certification? Well, the PLRA has to do with class certification because it forms part of the substantive law. And this court's decision in Perry, for example, says that the district court has to look beyond the claim, the pleadings, and look at the facts and the applicable substantive law. Now, we're not arguing that the PLRA itself- But you're all the way to talking about what the remedy is going to look like based on what the PLRA would require. Isn't that what you're talking about? Well, not exactly. What I'm talking about now is B-2. And B-2 already requires the district court to look ahead and ask, what is the remedy going to be? And will it provide relief to everybody? Ball said that air conditioning was not required even for inmates who were not healthy. The three inmates there, they all had hypertension and other disabilities. And the court said the remedy of air conditioning is not required by the Eighth Amendment. What has to be done for the subclass of the disabled? In order to properly define and certify a subclass, the court would have to make some determination that however that subclass is defined, its members face a risk that is substantially similar enough that we can be sure that a single remedy will provide them relief. Here, there's a problem because not only did the district court not get into it, so we don't really even have a basis to evaluate how the remedy would apply to the subclass, but we have testimony from Dr. Vasallo for the plaintiffs that an inmate's level of risk depends on his specific set of circumstances. What disabilities does he have? And it can vary substantially depending on what those are. And so that goes back to— What was the testimony on behalf of the plaintiffs? I beg your pardon? What was the testimony about the significance of disability and greater susceptibility to the heat? Yes, Dr. Vasallo testified that, for instance, a person with a heart condition might have twice the risk as a normal person, whereas someone with another condition—it's escaping me right now— might have ten times the risk as a normal person. There was also testimony from Dr. Ryder that even people who have the same condition, diabetes, for example, they might have vastly different risks depending on what type of diabetes they have, how advanced it is, what kind of organ damage they have. And it might be that someone with diabetes faces the same risk as someone without it, someone who's relatively healthy. And this creates a serious problem going forward because we have to ask, what does this injunction look like? If this class goes forward, what is the injunction going to be? And here we don't know. The plaintiffs asked for air conditioning. Do we have to know that today? We do, actually, because Rule 23 requires that the injunctive relief in a B2 class has to be identified with specificity. And so that is what the district court has to do. With regard to your PLRA, though, aren't you asking us to create a circuit split with the Tenth Circuit? And you know in general that we're wary to create circuit splits. Of course. Although in appropriate cases we do. Of course. I'm aware that there is language in Shook from the Tenth Circuit that suggests that the PLRA does not bear on class certification. Our position is that that's simply incorrect. Right, but we would be creating a circuit split with the Tenth Circuit to rule in your favor, correct? Yes. Straight up, that's what you're asking for? Yes. Okay, I'm also concerned that you define Ball and Gates saying that air conditioning is never required or something to that effect. I don't think that Ball or Gates, and as I recall, some of us were on that panel, but regardless, we can all read the case if we're not. I don't believe it says air conditioning is never required. It just said in that case where there could be less expensive, more easily done measures, those should be considered. And those hadn't been rejected yet. But in a case where if you had tried all the measures that anyone could think of except air conditioning and the person was still at a health risk, I don't think Ball or Gates stands for the proposition that you can't require air conditioning once all the other things have been tried. Is that the state's position? Absolutely not. No, that is not what we intend to suggest that Ball and Gates said. They do not say that air conditioning is never required, and that's not what we are saying. It just says in a case where there might be some things that we're not sure from the record they've been tried yet, there could be some record development on whether those things work. It doesn't say that you can't—our court has never said you can't require air conditioning for the Eighth Amendment. No, it has not. And Ball, for example, says one thing that the court might consider is whether you could air condition one part of the prison, one particular cell block. But it's not forbidding that. Absolutely not. So air conditioning may be required for the sickest, most heat-sensitive people even in this class, right? It might very well be. The problem here is that we just don't know because the district court offered nothing to allow this court to consider why or to what extent that kind of remedy might be appropriate and for whom. And so that's why the subclasses don't really help. But that's your argument that we've got to take the class certification rule, apply the PLRA restrictions because that's the substantive law, and then determine that the remedy is one that we just don't know. And so therefore we can't certify the class. Am I misstating your argument? No. The only caveat I would say is that it's not necessary in this case to incorporate the PLRA. This class fails even without the PLRA. What we're saying about the PLRA is that like any substantive law, if there were a statute that a class sued under that didn't allow for injunctive relief, for example, the court would have to consider that if they tried to certify a B2 class. We're just saying that here where we know once we get to a remedy there is going to be a substantive restriction, that should at least factor into the consideration of what kind of relief will be available to this class and will it be permissible. Assuming, Arguendo, that we would agree with you, and this is hypothetically, that the entire class, that it was too broad or not specific, but that the subclasses seemed perfectly appropriate, would we be able to give any type of hybrid order in that situation? Yes, you would. I would say that in this case, though, as a general matter, yes. In this case, though, I don't think there's a basis to affirm the subclasses specifically because the district court simply hasn't supported that certification. Certainly, I'm not saying the court can't remand for further consideration, but in this case, I think it would be very difficult to affirm the subclasses specifically. Thank you. Maybe you just answered this question, but I hear you today saying that the state is here objecting to the subclass certification. That is correct. We object to the entire order. Period. That's the only thing you're complaining about today. Oh, no, Your Honor. That's not the case. The bulk of our argument goes to the general class, which suffers the deficiencies that we speak most about in our briefs, and the subclasses, there's simply not enough discussion in the district court's order to evaluate. All right. Thank you. May it please the court. Briefly, what I heard my esteemed opponent say is that if one person is not affected by the heat, then no class action can ever be certified. Do you have case law to the contrary? There is too much case law to the contrary. Well, can you just give us one that we'd be bound by? Or the top ten. I'm not trying to talk to you. Is there a case law? In Webb out of the Fifth Circuit, Plata out of the Supreme Court, Graves v. Arpaio out of the Ninth Circuit, Parsons out of the Ninth Circuit, simply put, the standard is whether or not a condition of confinement poses a substantial risk to a person. Whether or not someone testifies that they believe the heat affects them is immaterial. The injury in play here is not, I have actually suffered an injury. The injury in play is the risk. Well, that's a different argument. I was asking, is there a case law that says if, indeed, one person is not at risk, is it improper to certify the class? Is there a case that says, you know, at the margin, you might have some difficulty, but we're looking at the core, and that's close enough? Or is there not? I'm not familiar with the specific case, but I would direct the court to Walmart, frankly, which does not hold that you need the exact same injury amongst every single thing. What you need is a uniform policy or a uniform manager at enforcing the discrimination. You do not need, it wouldn't be true, for instance, if Walmart had a uniform policy of not discriminating against a minority class and one minority, but they said, one minority, we won't discriminate against you. He or she is not affected. That can't be the law. Can I point you to something? I frankly posit that that is such an outlier of an argument. You can simply take him out of the class. Thank you for helping me there, Judge Riefle. Yes, you can simply take him out of the class. That's correct. I do want to get back to the issue at hand here. It has been written in the briefs that there was no evidence or the court did not conduct a rigorous analysis that is required by Rule 23. That simply is not correct. This class involves 1,400 inmates. It is a geriatric facility in one of the hottest parts of Texas. The conditions of confinement there, as the evidence showed, far greater than 90 and 100 degrees exposure. All of the inmates face this exposure. All of the inmates are treated uniformly according to Texas Department of Criminal Justice policies. Under Walmart, again, the issue is not whether there was an actual common injury but whether there's a common course of conduct, here there is, that leads to a substantial risk of harm. Here, the testimony that the court considered, the court did not base its decision on the pleadings. The court went well beyond the pleadings. It held four days of testimony. It heard testimony from one of the leading epidemiologists in the country on the issue of heat, the former director of the CDC, or director of the CDC as it applies to environmental exposure. In no uncertain terms, he testified that the conditions that the inmates face under the circumstances that they face pose a substantial risk of harm, as did Dr. Susie Visalo, who was the expert involved. Dr. Visalo testified that all of the inmates are at risk. So even if the person said they weren't at risk, the court could believe some credibility determinations at that stage so we would have to find that would be clearly erroneous, wouldn't we? You would, and my simple point to that is that if an inmate testifies he does not believe he's affected by heat, he is not an epidemiologist. He is not a board-certified emergency room physician. He is not one of the leading people on the issue of heat. He is at risk, whether he chooses to acknowledge it or not. The testimony here is unequivocal. All people at the PAC unit face a substantial risk of harm from the conditions to which they are exposed, namely dangerous levels of heat and humidity inside. Now, in the brief and today, the state has acknowledged that the temperatures and the humidity inside are a dangerous condition. They've acknowledged that, no ifs, ands, or buts. Not that that should be surprising given the number of cases that the court has had to hear, given Ball, given Hinojosa, given Webb, and given the 20 people that have died inside the system simply because they had the misfortune of living in housing areas that are un-air-conditioned. What they're instead saying is, well, look, that's true. There is a dangerous condition. That we know about. But our mitigation measures, they reduce or eliminate that risk such that it's no longer a substantial risk. Well, again, that's fine. They can make that argument. But this court needs to be aware that it is not supported in the record, and it was directly refuted at the class certification hearing. There's testimony from multiple plaintiffs' experts that the mitigation efforts were insufficient. So the district court could choose to rely on that even if we were the fact finder and were to conclude opposite. Unless we think that's clearly erroneous. I mean, don't we? We don't need to second-guess the facts. Exactly. This is an issue that is supported by expert testimony, and when the credibility of experts are at issue, yes. I suppose you could find Judge Ellison's conclusions to be clearly erroneous. For Ipsy-Dixit or something, but as long as they're supported. Right. And I do want to stress to the court that they are supported. And I'll direct the court to the record on appeal 95-97, 96-75, and more particularly 96-61 to 96-63. When Dr. Bassallo is asked, point blank, even with the mitigation measures in place, do these inmates still face a substantial risk of harm? Yes. The inmates are in danger despite what they're doing. That's what the experts said. Now, I don't mean to suggest that the plaintiffs have to win their case during a class certification appeal. The reason that I'm bringing this out is because what 23 requires is a rigorous analysis. In layman's terms, pulling up the hood to make sure that there's some there there. The suggestion that plaintiffs didn't meet this burden or that Judge Ellison didn't conduct the requisite analysis is belied by the factual record. If this was a certification that was for all the units, including all the work units, PAC units, all these different units that do all this work, would you say that would be too broad? Where the young, healthy people that every day do hard work in the heat and that sort of thing. This class isn't focused on laborers. I'm saying would that be too broad? I honestly don't know. You don't want to concede that. I don't want to concede that because I don't know and that wasn't at issue. But in all likelihood, that is broader than the class that we've sought. So I don't think it's an issue. I probably should concede it, frankly. But what's at issue here is the more interesting question, Your Honor, is there are uniform policies at TVCJ. And what distinguishes this case from a case that very likely maybe could be broad is that we have isolated this to one prison's housing area such that you can say definitively that each of the inmates are affected uniformly by the condition of confinement. Now it is probably a closer question in terms of the battle of the experts, whether the so-called young and healthy face a substantial risk. But that is not for this court to decide on certification. That is for Judge Ellison to decide in a trial on the merits. And plaintiffs have put forward ample evidence to say exactly that, and defendants have put forth zero evidence to rebut that. In fact, the expert that they chose to rebut that was labeled by was dismissed as incredible, and I believe the exact quote from Judge Ellison was frankly unbelievable. So in terms of your assessment of should we certify this as to everyone, the evidence overwhelmingly shows that all inmates face a substantial risk. Therefore, you don't even need to get into should we be doing subclasses. The question as to the subclasses isn't even close. Everyone, including TDCJ's own policies, acknowledge that for particular diseases like diabetes, COPD, hypertension, cardiovascular disease, all of those acknowledge that those people are at heightened risk. Well, I thought the opposing counsel made the point that some people with diabetes aren't at a risk. That's nowhere in the record. And to the extent he's relying on Dr. Riger's testimony at best, it's a controverted piece of evidence. The fact is TDCJ's policies list diabetes as a comorbidity that may affect heat tolerance. While they can argue later on at trial that the issue is whether or not someone has controlled or uncontrolled diabetes, in the record, that disease is unequivocally a high risk factor. But the issue is not is someone with diabetes more at risk than someone with COPD? Or is someone with diabetes more at risk than the so-called young and healthy? The issue is what baseline is there a substantial risk of harm? For instance, the testimony, again, unequivocal in this case, is that everyone is at substantial risk of harm. The fact that some inmates have diseases or disabilities that render them even more at risk of harm just goes to the urgency of this situation and the urgency of the problem. And so the court is aware. I know numerosity is not really an issue here. But we are talking about in the disability and heat sensitivity class well over 700 or 800 people. In this one geriatric unit? In this one geriatric unit. With regard to the PLRA, assuming we don't just put it to one side and we do consider it at the time of class action, do you lose? Today? No. Right. If we believe different than the Tenth Circuit that we should take into account the PLRA, do you lose? No, we do not lose because Judge Ellison recommended, well, again, the issue is I don't believe it's before the court, but the issue that this court would have to decide, I suppose, if it chose to disagree with the Tenth Circuit, if it chose to kind of rewrite class action law. No. If the court believed that it had to follow the PLRA as it was making, then we needed to integrate that into the determination. Then all the determination would require is the… That's not rewriting some law. No, no. I would say it's rewriting the time at which is appropriate to be addressing it. However, what all the court would need to do is discuss what instruct Judge Ellison to impose the least restrictive remedy. If the court wishes to weigh in on that fact now, I suppose it could. I don't know why it would choose to do so without a full record, but… Well, just hypothetically, does it make sense to allow a case to be certified under 23b2 based on injunctive relief that the district court would be categorically prohibited from awarding under the PLRA? If that were, in fact, true, does it still make sense to allow the certification? No. I think if a remedy is categorically prohibited, then I think the PLRA may bear some context, which is why I think the discussion between the court and the counsel as to the remedy of air conditioning is so important. Ball does not hold, as my esteemed counsel acknowledged, that air conditioning is not an appropriate remedy in certain circumstances. Here, it very likely could be. But if Judge Ellison decides that ultimately it's not, there are several other remedies that he could impose. For instance, having to do with policies or rewriting their mitigation efforts. Again, as a practical matter, at some point, the Texas Department of Criminal Justice needs to reduce the temperatures, the heat and humidity inside, to eliminate the substantial nature of the risk. I suppose it's theoretically possible that they could do that without reducing the temperatures. However, the evidence is pretty overwhelming that with temperatures this high. And so the remedy that was sought is a temperature or a heat index below 88 degrees, which is no different, frankly, than the injunction entered in the Graves v. Arpaio case, in which the Ninth Circuit upheld an injunction saying that people on psychotropic medications would need to be housed in conditions under 85 degrees. I think the significance of that is it points the court to say other courts have ruled that injunctions reducing temperatures to a certain level are valid. In fact, in Ball, although that was not a class action, this court said the temperatures need to get down to a safe level. How that happens is up to the court, and what I think the PLRA demands, when the remedy is sought, that it be the least restrictive means. We don't dispute that, but we do dispute that it should be decided now, and that's, I think, what the Tenth Circuit is fairly clear about. But beyond the Tenth Circuit, I think as a matter of logic, in order to address whether or not a remedy is the least restrictive means possible, you need to have a fully developed record, and you need the court to actually tell you what it is he's going to do. Again, Rule 23, you have to lift the hood, you have to conduct a rigorous analysis, and you have to evaluate more than the pleadings. But Judge Ellison, and I don't mean to belabor this, but it was more than four days of testimony. It was more than the state putting up an unbelievable expert who denied reality and said that no temperature is dangerous. Judge Ellison actually went to the prison. He experienced it firsthand in the summer. I mean, to suggest that he didn't do his job, that he didn't conduct a requisite analysis, it's simply belied by the record. And again, what I think is really important for the court to consider is the plaintiffs do not need to prevail at this stage. We just need a common course of conduct, which should be undisputed, a heightened risk, which again should be undisputed, and then an answer to that question, which can dispose of the validity of a claim. If we win, it's appropriate for class action. And similarly, if we were to lose a trial, it would still be an appropriate class action. So if you were to win, hypothetically, at that time, if the district court fashioned an injunctive relief, they would need to make sure that it didn't go beyond the particular plaintiffs to make sure that it wasn't broader than that. And if the district court did go beyond that, then they could appeal that at that time. Is that your position? Yes, and when you say particular plaintiffs, I mean the class in general. Well, I'm just reading from the PLRA. That's the term, particular plaintiff or plaintiffs. I'm reading the language of the PLRA. Well, the particular plaintiff or plaintiffs are apropos of the class. And the point of getting the class certified is that I believe that everyone becomes the plaintiff. And then the court needs to fashion a remedy that is the least restrictive so that all members of the class and the subclasses are protected. And at that point, with a fully developed record, factual and otherwise, the court would be in a position to evaluate. Now, to the extent the court wishes to suggest to the state in no uncertain terms that air conditioning is an appropriate remedy under certain circumstances, you know, going going. Why would we need to make suggestions? It seems that the state is already aware that that may be the situation. Well, I don't doubt that the solicitor general's office sitting here when crossed by this court acknowledges that fact. But I think there's been a powerful misreading of this court's opinions. And while this is not the, you know, germane necessarily to this appeal, it is very germane to the health and safety of the prisoners going forward. And I will tell you firsthand, there is a misreading of your case law. And it has been articulated and rejected time and time again. A little directness from this court might go a long way. And I say that with respect and with the understanding that it's not. And you didn't mean to imply that I was cross-examining people like I was an adversary or anything. No, I'm sorry. You meant I was asking questions to understand the case law and the arguments of the parties. Judge Elrod, I am a trial lawyer, and I do concede. Yes. As any appellate advocate, I thank you for your time. And if the court has no further questions. Please, the court. My friend said something that's very important. He said, you need to have the court tell you what it is he's going to do. I could not agree more. That is exactly what Rule 23b-2 requires, and that's what the court did not do here. The court threw out two possibilities, one of which is so vague we can't even tell what he means by it. What's going to happen if this case goes forward as a class is that the court down the road is going to have to draft a heat policy for the prisons. We don't know what that's going to look like. Maybe it will have tiered relief. Maybe some people might be entitled to air conditioning. We know that some people won't. The expert testimony that my opposing counsel refers to, the bulk of it, the only specific testimony that they offered related to the general risk posed by heat. To the extent they suggested that they were talking about mitigation measures, they had no basis in fact. There's no basis in the record because they admitted they didn't consider the medical records of inmates at the PAC unit. Dr. Vasallo even said, I don't need to consider medical records of 1,400 people to tell you that heat poses a risk, but she did need to do that to tell the court that heat plus mitigation measures still posed a substantial risk of serious harm to every person. Tell me again specifically what it is we don't know that we should be fearful of. What is it we don't know? What does the injunction look like? What injunction? It's a B2 class. The plaintiffs are asking for an injunction. We don't know. You're talking about the injunction that would come at the end of the litigation. Exactly. The district court referred to less drastic measures, but he didn't elaborate on what those might be. So what we're going to have is— So you're conceding that they're going to be entitled to an injunction. No, I'm not. You're going to oppose any claim for injunction. Absolutely. I'm assuming for purposes of argument since we're on a class certification. So we should be concerned about what the outcome is going to be in a case where you're going to take the position that they're not entitled to an injunction at all. That's right. But we need to be worried about this injunction that they're not going to get if you win. Then we need to be worried about what the relief may look like. You do. In the unlikely event they win because they're not supposed to, are they? That's exactly right, and the source for that is Rule 23B2. That's in Walmart. That is a clear requirement the court has to worry about. I want to address the question of whether a single class member could defeat class certification. First, that's not what we have here. It's not just that there's a single outlier. The court doesn't have to decide that question because it's not presented, but if it were, as Judge Riegele suggested, the district court does have some authority to modify the class definition. So if it were the case that there were a single outlier who might arguably defeat certification, the court can modify the class. And I would suppose that if there were someone who were so anomalous, there would be a reasonable means to do so. But I thought you argued that because the person that gave the testimony, they were anomalous, and so therefore it was inappropriate to certify the class. If you're referring to Mr. Santee, the individual plaintiff, then yes, absolutely. And not just because he's one person. It's because he represents part of the general class. And so it's not as though we just have a single person. He represents the general class. But couldn't the court have determined that he's incorrect about whether he faces a risk or not? Isn't that within the prerogative of the district court after hearing the medical doctors? Not on this record because the experts did not provide the court with support for that conclusion. To the extent the district court purported to make that factual finding, that was clearly a willingness. But we submit that the bigger error and the one that the court needs to reach is that the court did not even get to the proper legal question under Rule 23a2 for commonality. But as he just said, there's a serious question about whether these mitigation measures are effective for everybody. That effectively shifts the burden to us to disprove their claim at class certification, which is not what we're required to do. If there are no further questions, I would urge the court to reverse the district court's order. Thank you. We have your argument.